The subject of "the power of Courts, and the rights of attorneys," would seem to be exhausted by the elaborate argument of the counsel for the respondent. The want of some "student *Page 167 
of the law" on the other side of the question, equally diligent with Mr. Moore, is met by the very full expose of the result of his examination of the cases.
The power of the Court, on the ground of self protection, outside of the common law doctrine, and of the statute in regard to contempts, — to disbar an attorney, who has shown himself unfit to be one of its officers, although earnestly contested on a former argument by six learned members of the bar, is now conceded.
So the principle is settled; and the only difference of opinion, is in respect to its application.
On the side of the respondent, its was insisted, that the principle applies only to cases of moral delinquency; as, if an (215) attorney be convicted of crime, say forgery — or, if, without a conviction it appears to the Court, upon an investigation had before it, that an attorney is guilty of gross fraud; say, by making corrupt misrepresentations to his client, and obtaining an assignment for an inadequate consideration.
But we hold that the principle embraces also, cases where an attorney makes a publication calculated to injure the court, and intended by him to have that effect — "an evil bird bewrayeth its own nest." The court has power to rid itself of one, who thus proves that he is not fit to be trusted as one of its officers.
If the attorney, when called on, disavows the criminal intention, that is an end of the proceeding: — should he be unable to make this disavowal, the only alternative, is an order to strike his name off of the roll.
We were pleased to hear the hope expressed on the argument, that this discussion might induce a better state of feeling. This tender of a return to good feeling, is cordially accepted.
Since the principle is now conceded, and there is only some difference of opinion as to its application, we presume the public mind will be relieved from fear of usurpation of power by the court, and of "judicialtyranny."
In our case, the facts not being controverted, it was, in the firstplace, a question of law for the court: Was the publication calculated to injure the court, and destroy its usefulness? The article refers to Judge Jones in his official character, and is calculated to hold the court up to ridicule, and thereby injure and bring it into disrepute. But it purports to be by the editor of a newspaper — has no reference to Mr. Biggs as an attorney of the court, and does not seek to attach to the publication any additional importance, by reason of the fact, that besides being an editor of the newspaper, (it would be the same as to a merchant or a farmer, except that an editor of a newspaper has greater facility for publication,) he is also an attorney (216) *Page 168 
of the court. This fact, however, being known to his readers, was calculated to add to the force of the article.
There is a marked difference between this article, and one purporting to be published by an attorney of the court; and an exceeding difference between a mere editorial of a newspaper, and a solemn Protest, published by a combination and confederacy of many attorneys, assuming to act as the Bar of the State of North Carolina. In this view, perhaps it might have been as well if his Honor had not noticed the article, and had allowed it to pass as a "newspaper squib." But he felt it to be his duty, as a court, to put Mr. Biggs one of its editors, under a rule. Mr. Biggs, if so advised, had the right, in answer to the rule, to raise the question, that a prima facie
case was not made out, and that he was not called on to make a disavowal. But he elected to make a disavowal. So the question: Whether an editorial article, when the editor of the newspaper is also an attorney of the court, falls under the principle, is not presented by the record.
This court is not at liberty to go out of the way, in order to express an opinion upon it.
In Ex parte Moore, 63 N.C. 397, the court says: "The rule rests on sound reason. In this proceeding, as the court is judge in its own case in the first instance, when a case is made out in the judgment of the court, the party, in the last instance, is allowed to try himself. His intention
is locked within his own breast; is known to himself alone, and he is permitted to purge himself by his own disavowal. He cannot be convicted if he is innocent, as he may be by false evidence before a jury. For, the court does not try him; he tries himself. C. J. Wilmot's Opinions, 267-8, referred to in the Trial of Judge Peck, 507. If the party, after the court decides against him, declines to try himself, it must be because he knows himself to be guilty.
Mr. Biggs submitted to "try himself," and filed a disavowal in these words: "This respondent respectfully answers: 1. That (217) as an attorney and counsellor in this court, he has ever been respectful, both in his deportment and language, to his Honor, Judge E. W. Jones; and disavows having ever entertained any intention of committing a contempt of court, or any purpose to destroy or impair its authority, or the respect thereto."
Had the answer stopped here, there would have been no difficulty, and the rule would have been discharged, "as of course."
The matter set out in the subsequent part of the answer (as it is termed), might have been relevant in the first stage of the proceeding: in order to show that a "prima facie case" was not made, and consequently, that the party could not be required to make a disavowal. But the disavowal had already been made: so this matter *Page 169 
was supererogatory, and had no bearing at that stage of the proceeding, after the party had tried himself. Its only tendency was to "embarrass the question." And so much confusion is thrown on it as to have led his Honor into error. He holds: "The first clause of the answer is not responsive to the rule, because it does not particularly disavow an intention to impair the respect due to the authority of the court by the publication of the article referred to." The respondent disavows "having ever entertained any intention of committing a contempt of the court, or any purpose to destroy or impair its authority, or the respect due thereto."
True, this disavowal is more general that it need to have been; and its generality may have been intended to weaken its force. But still "the greater includes the less," and there is a disavowal, included in the general words, of an intention by the publication of the article in the newspaper, to commit a contempt of the Court, or of any purpose to destroy or impair its authority or the respect thereto. We think this in substances responds to the rule.
This proceeding is one of a peculiar nature, of necessity. The Court is to some extent, a judge in its own case, hence, when the respondent submits to "try himself," and a disavowal is made on oath, the Court must accept it, and is not allowed to call (218) in question, the truth or the sincerity of the disavowal. There is no mode of trying such questions; and they are left "to the Searcher of all hearts."
The disavowal entitles the respondent to be excused, or acquitted, and the effect in either view is to discharge the rule.
There is error in the ruling of the Court below. Order reversed, and Rule discharged.
Per curiam.
Error.
Cited: Winslow v. Comrs., 64 N.C. 223; In re Moore, 64 N.C. 398; S. v.Smith, 65 N.C. 367; Kane v. Haywood, 66 N.C. 32; S. v. Jefferson,66 N.C. 311; S. v. McGimsey, 80 N.C. 383; Young v. Rollins,90 N.C. 131; Hughes v. Comrs., 107 N.C. 605; S. v. Herndon,107 N.C. 935; In re Robinson, 117 N.C. 540; S. v. Marsh,134 N.C. 186; In re Ebbs, 150 N.C. 51; S. v. Webb,155 N.C. 430; S. v. Johnson, 171 N.C. 801; McLean v. Johnson,174 N.C. 348; In re Parker, 177 N.C. 468; S. v. Rooks, 207 N.C. 276;S. v. Moore, 210 N.C. 689; In re Ogden, 211 N.C. 103; S. v. Todd,224 N.C. 777. *Page 170